UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| ROBERT DANIEL ARGO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CASE NO. 6:13-cv-00817-JEO |
| | ) |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Plaintiff Robert Daniel Argo brings this action, through counsel, pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying Plaintiff's application for Supplemental Security Income benefits ("SSI"). (Doc.[1] 1).  Th e case has been assigned to the undersigned United States Magistrate Judge pursuant to this court's general order of reference dated January 14, 2013.  The parties have consented to the jurisdiction of this court for disposition of the matter.  *See* 28 U.S.C. § 636(c), FED. R. CIV. P. 73(a).  Upon review of the record and the relevant law, the undersigned finds that the Commissioner's decision is due to be affirmed.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed an application for SSI on August 4, 2010, alleging disability beginning May 15, 2010, when he was unable to work. (R. 46, 117).[2]  His claim was denied

---

[1] References herein to "Doc(s). __" are to the document numbers assigned by the Clerk of the Court to the pleadings, motions, and other materials in the court file, as reflected on the docket sheet in the court's Case Management/Electronic Case Files (CM/ECF) system.

[2] Citations to (R. ___) are to the page of the administrative record, which is encompassed within Docs. 5-1 to 5-8.

initially. (*Id*. at 63-67) . Thereafter, he requested a hearing before an Administrative Law Judge ("ALJ"), which was held on October 18, 2012. (R. 68). Plaintiff was represented by counsel at the hearing. (*Id*.) The ALJ denied Plaintiff's application. (R. at 46-57).

Plaintiff requested the Appeals Council review the ALJ's decision. The Appeals Council declined Plaintiff's request for review. (R. 4-6). Therefore, the ALJ's decision represents the final decision of the Commissioner. (*Id*.) Plaintiff thereafter timely filed this action for judicial review under 42 U.S.C. § 405(g), asserting that the findings of the Commissioner are not based upon substantial evidence and that improper legal standards were applied. (Doc. 1).

## II. STANDARD OF REVIEW

In reviewing claims brought under the Social Security Act, this court's role is a narrow one: "Our review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, and whether the correct legal standards were applied." *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *see also Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988). The court gives deference to factual findings and reviews questions of law de novo. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991). The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner], rather [it] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)) (internal quotations and other citation omitted). "The Commissioner's factual findings are conclusive if supported by substantial evidence." *Wilson*, 284 F.3d at 1221 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Allen v. Bowen*, 816 F.2d 600,

602 (11th Cir. 1987)). "Substantial evidence" is "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Social Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotations and citations omitted). As just noted, conclusions of law made by the Commissioner are reviewed de novo. *Cornelius,* 936 F.2d at 1145. "No ... presumption of validity attaches to the [Commissioner's] conclusions of law." *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III. DISCUSSION

A.  The Facts

   1.   Background

At the time of the decision in this case, Plaintiff was twenty-six years old with a limited high school education having completed only the eleventh grade. (R. 133). He has past relevant work as a chicken rehanger and a general laborer. (*Id*. at 174)

   2.   ALJ Findings

The ALJ found that Plaintiff has severe physical impairments of sinusitis, vertigo, anxiety, and mitral valve prolapse. (R. 48). She also found that Plaintiff had no impairment or combination of impairments that met or medically equaled any listing. (*Id*. at 49). She further found that Plaintiff had the residual functional capacity ("RFC") to perform medium work, except that he could not climb ladders, scaffolding, or ropes; he could occasionally balance; he could not drive; he needed to avoid exposure to hazards, dangerous heights, and pulmonary irritants; he needed to be limited to brief and superficial interaction with the public and co-workers; and, he required two unscheduled ten-minute breaks per week. (*Id*. at 50). The ALJ determined that he could return to his past relevant work as a chicken rehanger and that he could

perform other jobs in the national economy. (*Id*. at 56-57). Her final conclusion was that Plaintiff was not disabled. (*Id*. at 57).

**B.     Analysis**

Plaintiff argues the ALJ erred in that her RFC findings are not based on substantial evidence. (Doc. 11 at 6). Specifically, he states that the ALJ erred (1) "in impliedly characterizing the disability specialist's opinion as rendered by an expert medical professional" and (2) in failing to order a consultative examination. (*Id*. at 6-8).

As noted above, the ALJ found that Plaintiff was capable of performing "medium work" with certain limitations. (R. 50). Plaintiff's over-arching challenge is that this conclusion is wrong because the ALJ's RFC findings are not based on adequate evidence. (Doc. 11 at 6-8). The Commissioner responds that the evidence is sufficient and there was no need for a doctor's opinion in assessing Plaintiff's RFC. (Doc. 12 at 7).

An RFC is an "individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis ... [which] means 8 hours a day for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184 (July 2, 1996). It "involves determining the claimant's ability to do work in spite of his impairments" in consideration of all relevant evidence. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a). It is the responsibility of the Commissioner to determine a claimant's RFC. *See Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010) (stating that "the task of determining a claimant's residual functional capacity and ability to work is within the province of the ALJ, not of doctors"). As recently noted by Chief Judge Karon O. Bowdre:

> Because the hearing before an ALJ is not an adversarial proceeding, the ALJ has a basic obligation to develop a full and fair record before determining a claimant's Residual Functional Capacity. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). Developing a full and fair record, however, does not require an ALJ to secure a medical source opinion regarding the claimant's RFC. *See* 20 C.F.R. §§ 404.1546(c), 416.946(c); *see also Langley v. Astrue*, 777 F. Supp. 2d 1250, 1261 (N.D. Ala. 2011) ("The failure to include [an RFC assessment from a medical source] at the State agency level does not render the ALJ's RFC assessment invalid."); *Green v. Soc. Sec. Admin*, 223 F. App'x 915, 923–24 (11th Cir. 2007). Because the overall RFC determination is "based on all the relevant evidence in [the claimant's] case record," 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) (emphasis added), the ALJ can fulfill his responsibility to develop the record even without a medical source opinion. Thus, as long as the ALJ's determination is based on substantial evidence, the absence of an RFC assessment by a medical source will not render the ALJ's RFC determination invalid. *Green v. Soc. Sec. Admin*., 223 F. App'x 915, 924 (11th Cir. 2007).
>
> While the failure of an ALJ to rely upon an RFC assessment from a medical source is not enough to invalidate the ALJ's overall RFC determination, the ALJ's duty to fully develop the record may require the ALJ to order a consultative examination if "necessary to make an informed decision." *Smith v. Commissioner*, 501 F. App'x. 875, 878 (11th Cir. 2012). Federal regulations provide that such an evaluation is appropriate "to resolve an inconsistency in the evidence or when the evidence as a whole is insufficient to allow [the ALJ] to make a determination." 20 C.F.R. §§ 404.1519a(b), 416.919a(b). Ultimately, however, the general rule remains: if substantial evidence supports the ALJ's decision, the ALJ does not err in denying a request for a consultative examination. *Holladay v. Bowen*, 848 F.2d 1206, 1209-10 (11th Cir. 1988); *see also Reeves v. Heckler*, 734 F.2d 519, 522 n. 1 (11th Cir. 1984).

*Thompson v. Colvin*, 2014 WL 1278085, *2-3 (N.D. Ala. 2014); *see also* 20 C.F.R. § 416.946(c) (stating, "the administrative law judge or the administrative appeals judge at the Appeals Council ... is responsible for assessing your residual functional capacity").

It is also well-settled that Plaintiff bears the burden of proving that he is disabled. *See* 20 C.F.R. § 416.912(a) ("In general, you have to prove to us that you are blind or disabled. This means that you must furnish medical and other evidence that we can use to reach conclusions

5

about your medical impairment(s)."); 20 C.F.R. § 416.912(c) ("Your responsibility.  You must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled.  You must provide evidence, without redaction, showing how your impairment(s) affects your functioning during the time you say that you are disabled, and any other information that we need to decide your claim."); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (stating that "the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim").

### 1. The Adequacy of the Evidence

This court finds that there is substantial evidence to support the ALJ's RFC findings regarding Plaintiff.  At the outset, the ALJ found that Plaintiff had severe impairments, including sinusitis, vertigo, anxiety, and mitral valve prolapse.  (R. 48).  She also found that he had other complaints of rib cage/chest defect, dysautonomia, and paresthesia in the hands.  (*Id*.)  These, however, were not supported by "significant objective medical findings ... in order for these impairments to be considered severe within the meaning of the regulations." (*Id*.)

The record shows that on January 2, 2008, Plaintiff was seen at Cullman Family Practice where the medical notes state:

> Robert has been seen by a number of physicians recently.  He gives me a strange story.  He went to see ENTs for pressure in the head.  He said the doctor there put him on Xanax and told him he needed to see a neurologist.  He really doesn't have any symptoms that sound neurological.  He has facial pressure and congestion and stuffy nose but they are allergy in nature.

(R. 175).  The notes also show that Plaintiff did not exhibit any signs of anxiety.  (*Id*.)  He was restarted on Atenolol for his mitral valve prolapse.  (*Id*.)

In November 2008, Plaintiff was treated by Dr. Bruce Morgan with ENT Associates of Alabama for complaints of sinus pressure, pain, and dizziness. (R. 184). He was diagnosed with rhinitis and given Flonase. (*Id*. at 183). He was also directed to return if he had any other problems with dizziness.

Plaintiff's next reported treatment was February 17, 2010. He complained of pressure in his eyes, that his ears were hurting, and dizziness. (R. 182). Dr. Morgan noted that he had not seen Plaintiff for over a year and that he had not been using his Flonase recently. Plaintiff was described as alert and oriented. He was diagnosed with allergic rhinitis and sinusitis. He was prescribed Prednisone, Flonase and Amoxicillin. He was to be seen again as need. (*Id*.)

On May 11, 2010, Plaintiff went to the Emergency Room at the Cullman Regional Medical Center with complaints of numbness in his mouth, hands, and feet. (R. 227). He reported being anxious about his job situation. His examination was normal except for his hyperventilating. He was diagnosed with anxiety and hyperventilation syndrome. He was prescribed Ativan and Norco. (*Id*.)

He was again seen again at the Emergency Room on May 17, 2010, complaining about moderate ear pain, dizziness, and sinus pressure. (R. 236). He was prescribed Ativan and Norco. (*Id*.)

On May 19, 2010, Plaintiff returned to see Dr. Morgan, complaining about dizziness. (R. 181). Dr. Morgan was unable to locate the source of Plaintiff's dizziness. Plaintiff was provided with additional medication and told to see his primary care physician. (*Id*.)

Later in the day, Plaintiff returned to the Emergency Room again complaining about elevated blood pressure. (R. 245). He had no complaint of dizziness or headaches. He was released after being diagnosed with high blood pressure. (*Id*.)

Plaintiff had Videonystagmography ("VNG") testing done on May 26, 2010. (R. 185). It revealed "a possible central component with abnormal OPKs and a peripheral indicator with the abnormal calorics." (*Id*.) For the most part, the remainder of the exam demonstrated Plaintiff was within normal limits. (*Id*.)

On June 2, 2010, Plaintiff returned to Dr. Morgan for a follow-up visit. (R. 179). He noted that the "VNG was essentially negative, and Plaintiff indicate[d] that he thinks he is getting better." (*Id*.) Morgan also noted that Plaintiff's blood pressure was slightly elevated. Plaintiff was provided a prescription and Dr. Morgan recommended that he see his primary care physician. (*Id*.)

On July 13, 2010, Plaintiff was seen by Dr. Saleem Naviwala, an otolaryngologist, at ENT Head and Neck Surgery. (R. 288-89, 300). He presented with dizziness, an ear ache, and vague sinus symptoms. He was diagnosed with TMJ arthralgia. (*Id*.) He was prescribed medication.

On August 17, 2010, Plaintiff went to the emergency room complaining of anxiety over the preceding two months. (R. 254). He was examined without any abnormalities being found. He refused anti-anxiety medication. (R. 254-55). He left against medical advice. (R. 255).

Two days later, he was seen by Dr. Thomas Montgomery, a family practitioner at Cullman Family Practice. (R. 265). He complained of left-side body pain, being jittery, and increased dizziness (since May). His overall examination revealed no abnormalities. He was

8

Case 6:13-cv-00817-JEO   Document 13   Filed 04/29/14   Page 9 of 14

diagnosed with dysuatonomia – a malfunction of the autonomic nervous system. (R. 53, 266). He was prescribed Clonazepam and his other medications were discontinued. (R. 266).

Plaintiff had an MRI done on November 23, 2010, which showed no abnormality in the head area, but showed extensive sinusitis. (R. 286-87, 300). He was treated with antibiotics, anti-reflux medication, and antihistamines. A subsequent CT scan of his sinus on May 10, 2011, showed "persistent sinusitis and he was [recommended for] Functional Endoscopic Sinus Surgery and Septoplasty for resolution of his condition." (*Id*.) In the interim, Plaintiff was continued on a conservative treatment of Fexofenadine and Zantac. (*Id*.)

On September 29, 2011, Plaintiff was diagnosed by Dr. Naviwala with rhinitis medicamentosa – nasal congestion induced by extended use of topical decongestants. (R. 299). It was recommended that Plaintiff discontinue his use of Afrin nose spray. (*Id*.)

The foregoing medical history supports the ALJ's RFC finding that Plaintiff had severe impairments, including sinusitis, vertigo, anxiety, and mitral valve prolapse. (R. 48). Her conclusion that Plaintiff had other non-severe complaints of rib cage/chest defect, dysautonomia and paresthesia[3] in the hands is also supported by the record. (*Id*.) The medical treatment articulated above is not consistent with the type of history that would be indicative of a totally disabled individual. (R. 53). The number of medical visits related to Plaintiff's sinus issue was relatively low for "the allegedly disabling symptoms" reported; the diagnoses were not reflective of disabling conditions; and, the treatment recommended was conservative, consisting of principally medications. (*Id*.) While surgery was recommended, Plaintiff never had it. His

---

[3]Paresthesia is "an abnormal sensation of tingling, numbness, or burning. Paresthesias are usually felt in the hands, feet, arms, or legs, but can be felt anywhere." *Web*MD, September 26, 2011, available at http://answers.webmd.com/answeres/1198510/what-is-paresthesia.

medical references to anxiety were even more sparse. He also refused treatment for the same at his last emergency room visit. (R. 54). Finally, Plaintiff has never sought other treatment from a free or subsidized clinic concerning his need for surgery or other mental health needs.

The ALJ's RFC determination is further supported by the evidence in that the medical records and findings contain no objective evidence demonstrating the disabling symptoms alleged by Plaintiff. As noted by the ALJ, "Diagnostic testing was unremarkable except for the sinusitis. The scant, infrequent and non-descript medical evidence of record simply does not support the severity of limitations alleged by [Plaintiff]." (R. 54). Additionally, the treating doctors have not placed any noteworthy restrictions on Plaintiff. (R. 54-55).

    2.    **Implied Characterization of Disability Specialist's Opinion as being from a Medical Expert**

Plaintiff contends that the "ALJ erred in impliedly characterizing the disability specialist's opinion as rendered by a expert medical professional." (Doc. 11 at 7). He goes on to argue that the opinion "is entitled to no weight whatsoever as it does not emanate from an acceptable medical source...." (*Id.* (citation omitted)). Additionally, Plaintiff notes that "Dr. Estock reviewed only the mental component of the claim...." (*Id.* (citation omitted)). The Commissioner does not address these contentions.

After reviewing the medical record evidence, the ALJ proceeded to examine the "opinion evidence." (R. 55). She commenced that review with an analysis of Dr. Robert Estock's Psychiatric Review Technique." (*Id.*) Dr. Estock noted Plaintiff's anxiety and stated that Plaintiff had a medically determinable impairment, but it was not severe. (*Id.*) Noting Dr. Estock as a State agency medical consultant and his experience, the ALJ stated that she gave

great weight to his assessment, but also compared it with Plaintiff's testimony and allegations regarding his anxiety attacks, and concluded that the RFC was supported by the medical evidence of record. (*Id.*) The court agrees. Plaintiff has offered nothing in the record that demonstrates otherwise.

In the last paragraph in the discussion of the medical opinion evidence, the ALJ noted that her RFC is supported by the record and "[t]here is no treating source opinion that [Plaintiff] is more limited than as provided in the [RFC] assessment. In fact, the above [RFC] assessment is more generous than the opinion of the state agency expert." (R. 55-56). To the extent this is the implied reference to the State disability specialist's opinion being rendered by an expert medical professional that Plaintiff complains about (see doc. 11 at 7), the court is not impressed. The ALJ does not state that the State disability Specialist, Deborah L. Wright, was an expert medical source.[4] (R. 56). Additionally, he gives no undue emphasis to her assessment or information. Accordingly, this aspect of his challenge is due to be denied.

      **3.    Failure to Order a Consultative Examination from a Medical Source**

Plaintiff next contends that the ALJ erred in failing to obtain a medical source opinion (doc. 11 at 7-8), the court disagrees. As has been already noted, the ALJ has a duty to develop the record fully and fairly. *Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999). "However, an ALJ has no duty to order a consultative evaluation where a sufficient record exists to make a determination and no previous treating or consultative physician has recommended an additional evaluation." *Bentley v. Astrue*, 2012 WL 4479273, *2 (N.D. Ala. September 25, 2012) (citing

---

[4] Plaintiff's challenge is premised, at least in part, on the fact that the ALJ's reference to the specialist is made under the "*Medical Evidence*" heading in the Decision. (R. 52-56).

*Wilson*, 179 F.3d at 1278 and *Good v. Astrue*, 240 F. App'x 399, 404 (11th Cir. 2007)). Similarly, a consultative examination "may" be obtained "where the evidence as a whole is insufficient to support a determination or decision on [a] claim." 20 C.F.R. § 416.919a(b); *Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001) ("The regulations 'normally require' a consultative examination only when necessary information is not in the record and cannot be obtained from the claimant's treating medical sources or other medical sources"). Finally, "[w]hen alleging disability, the claimant carries the burden of proving that he is disabled, and he alone is responsible for producing evidence to support his claim." *Bentley*, 2012 WL 4479273, *2 (citing 20 C.F.R. §§ 404.1512(a), 416.912(a); *Ellison*, 355 F.3d at 1275).

Plaintiff's challenge is without merit for a number of reasons. First, the ALJ is not required to base a plaintiff's RFC on a doctor's opinion. The RFC finding is reserved to the ALJ. *See* 20 C.F.R. § 416.927(d)(2) ("the final responsibility for deciding the [RFC] is reserved to the Commissioner"); *Langley v. Astrue*, 777 F. Supp. 2d 1250, 1252 (N.D. Ala. 2011) (stating that an ALJ is not required to base his or her RFC finding on a doctor's opinion). The ALJ is to "assess [the] residual functional capacity based on all the relevant evidence in [the] case record." 20 C.F.R. § 416.945(a) (citing 20 C.F.R. § 416.946). Second, nothing before this court suggests that the ALJ needed a medical source opinion to assess Plaintiff's RFC. To the contrary, the record is replete with evidence supporting her determination. Third, Plaintiff has failed to show that he was prejudiced by the failure of the ALJ to more fully develop the record. More specifically, Plaintiff has pointed to noting in the record that challenges her RFC determination. It is evident the ALJ properly considered and evaluated the entire record in her well-reasoned opinion.

To the extent Plaintiff argues that further development of the record was necessary concerning his dysautonomia "based on the persistent symptoms of dizziness and the ALJ's own severe impairment finding of vertigo which [is] consistent with the hallmark of dysautonomia Orthostatic intolerance (the inability to remain upright),"[5] the court again disagrees. (Doc. 11 at 8). The record is clear, the ALJ fully considered the diagnosis. She stated:

> Dr. Thomas Montgomery diagnosed the claimant with dysautonomia in August 2010.... [He] is a family practitioner so his opinion appears to rest at least in part on an assessment of an impairment outside the doctor's area of expertise. [his] treatment noted indicated the physical exam revealed no abnormalities. It is unclear what this diagnosis was based on given the normal exam and no lab work or other testing. He prescribed [Plaintiff] Clonazepam for panic disorder.... There was no further mention of dysautonomia in the record. Given the lack of evidence in the medical record regarding dysautonomia, I find it is not a severe impairment....

(R. 48). This claim is without merit because the ALJ's assessment is supported by the record. Plaintiff has pointed to nothing in the medical records disputing the ALJ's conclusion or warranting further inquiry. Finally, Plaintiff has shown no prejudice. While a medical expert's opinion might have further enlightened the situation, it was not required.

---

[5] "Dysautonomia is a general term used to describe a breakdown, or failure of the autonomic nervous system. The autonomic nervous system controls much of your involuntary functions. Symptoms are wide ranging and can include problems with the regulation of heart rate, blood pressure, body temperature and perspiration. Other symptoms include fatigue, lightheadedness, feeling faint or passing out (syncope), weakness and cognitive impairment.

Autonomic dysfunction can occur as a secondary condition of another disease process, like diabetes, or as a primary disorder where the autonomic nervous system is the only system impacted. These conditions are often misdiagnosed.

Over one million Americans are impacted with a primary autonomic system disorder. The more common forms of these conditions include Postural Orthostatic Tachycardia Syndrome (POTS)...." National Dysautonomia Research Foundation, *What is Dysautonomia*? (last visited April 28, 2014), available at http://ndrf.org/.

"Orthostatic intolerance (the inability to remain upright) is a hallmark of the various forms of dysautonomia. Dysautonomia conditions can range from mild to debilitating and, on rare occasions, can be life threatening." Medical News Today, *What Is Dysautonomia*? *What causes Dysautonomia*?, (July 14, 2007), available at http//www.medicalnewstoday.com/releases/7685.php.

In sum, the undersigned finds that the record is sufficient to support the ALJ's decision. She was not required under the circumstances to seek an additional consultative evidence. Plaintiff simply failed to carry his burden of proof in this matter.[6]

## IV. CONCLUSION

For the reasons set forth above, the undersigned finds that the decision of the Commissioner is due to be **AFFIRMED**. An appropriate order will be entered separately.

**DONE**, this the 28th day of April, 2014.

_____
**JOHN E. OTT**
Chief United States Magistrate Judge

---

[6]The Commissioner also argues in her brief that the ALJ properly found that Plaintiff could perform his past relevant work or could perform other available work in the national economy. (Doc. 12 at 10-12). Plaintiff does not specifically challenge this aspect of the ALJ's determination. (See. Doc. 11). However, the court does find that the ALJ's determination was premised on the testimony of the vocational expert at the determination hearing. (R. 27-29, 56). This constitutes the substantial evidence necessary to support the decision. Additionally, Plaintiff has offered nothing to contradict this finding.